UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
BIKRAM YONJAN,                                              Chapter 7
        DEBTOR                                       Case No. 08-10796-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

      The matters before the Court are the Sysco Boston, LLC [sic] Motion For Reconsideration (the "Motion for Reconsideration") filed by Sysco Boston, LLC ("Sysco") and the opposition thereto filed by Bikram Yonjan (the "Debtor"), as well as the Debtor's Motion to Amend Schedule F and G to Include Missing Creditor (the "Motion to Amend"). Sysco seeks reconsideration of my order dated June 23, 2010, reopening the Debtor's case for the purpose of allowing him to amend his Schedules to list a personal guaranty on the basis that such relief is inequitable where the debt was incurred post-bankruptcy. For the reasons set forth below, I will enter a pre-trial order and schedule the matter for trial forthwith.

**II. BACKGROUND**

      As will be discussed further below, I have been offered very little by way of facts in this case. Those provided herein are drawn from the Court's docket, the parties' pleadings, and the representations made at the hearing held on the Motion to Reconsider on July 21, 2010.[1]

---

[1] I take judicial notice of the docket in this case as well as that of the related case pending before the Honorable Frank J. Bailey, *In re Everest Crossing, LLC*, 09-16664-FJB. *See Rodi v. Southern New England School of Law*, 389 F.3d 5, 17-19 (1st Cir. 2004) (citations omitted).

Prior to his bankruptcy filing, the Debtor was "the principal and president" of Everest Crossing, LLC ("Everest").[2] Everest operates a restaurant known as OM Restaurant in the Harvard Square section of Cambridge, Massachusetts.[3] Sysco, formerly known as A.J. Martin, Inc., supplied "merchandise" to Everest on credit.[4] In October of 2007, the Debtor signed a personal guaranty pursuant to which he guaranteed, to some extent, Everest's obligations to Sysco under a credit agreement between them (the "Guaranty").[5] By February 4, 2008, the Debtor was no longer the president of Everest and had nothing to do with its operations. Although Sysco asserts that the Debtor could have terminated the Guaranty at any time, he apparently took no such action upon leaving Everest. Nonetheless, Sysco continued to supply Everest on credit after the Debtor's departure.

On February 4, 2008, the Debtor filed a voluntary Chapter 7 petition. He did not, however, list Sysco as a creditor in his schedules or on the matrix of creditors. On March 5, 2008, the Chapter 7 trustee filed a report of no distribution indicating that there was no nonexempt property available for distribution to creditors. In the absence of any objection, the Debtor received a discharge on May 6, 2008, and the case was closed three days later.

On July 15, 2009, Everest filed a voluntary Chapter 11 petition.[6] Apparently, Everest defaulted on the terms of the credit agreement with Sysco and a debt incurred in June and July of

---

[2] Trans. July 21, 2010 at 4:1-3.

[3] *See In re Everest Crossing, LLC*, 416 B.R. 361, 361-362 (Bankr. D. Mass. 2009).

[4] Trans. July 21, 2010 at 3:4-6.

[5] The Guaranty is not before me at this time.

[6] *See In re Everest Crossing, LLC*, Case No. 09-16664-FJB.

2009 remains outstanding.[7] Sysco brought suit against the Debtor in the Taunton District Court seeking to enforce the Guaranty on January 15, 2010.[8]

On June 23, 2010, the Debtor filed a Motion to Reopen his bankruptcy case for the purpose of listing Sysco as a creditor. It was granted on the same day. On July 7, 2010, the Debtor filed the Motion to Amend along with amended Schedules F - Creditors Holding Unsecured Nonpriority Claims ("Schedule F") and G - Executory Contracts and Unexpired Leases ("Schedule G"). Sysco, however, subsequently moved for reconsideration. The Debtor filed an opposition, and I conducted a hearing on the Motion for Reconsideration on July 21, 2010. At the conclusion of oral arguments, I took the matter under advisement.

### III. POSITIONS OF THE PARTIES

#### Sysco

The main thrust of Sysco's argument is that allowing the Debtor to reopen his case and amend his schedules at this stage is inequitable. Though conceding that I have jurisdiction to void the Guaranty, Sysco emphasizes that the Debtor could have terminated the Guaranty at any time without Court intervention and that the debt it now seeks against the Debtor was incurred post-bankruptcy. "In essence," Sysco contends that "this is an end run around the [Debtor's] failure to exercise his right to revoke the contract; and now, because he's liable on a debt incurred after his bankruptcy filing, he's looking to come back to Court, and hoping that [the Court will] retroactively

---

[7] I note that Sysco did not file a proof of claim in Everest's case, but "Sysco Food Service" is listed on Everest's Schedule F - Creditors Holding Unsecured Nonpriority Claims. *See* Docket No. 70, Case No. 09-16664-FJB.

[8] *See Sysco Boston, LLC fka A.J. Martin, Inc. v. Bikram Yonjan*, Docket No. 201031CV000060.

allow him to avoid a debt he obviously owes."[9]

<u>The Debtor</u>

In opposition to the Motion to Reconsider, the Debtor argues that he is seeking to do no more than what 11 U.S.C. § 350(b) allows, namely, reopen a case to "accord relief to the debtor" by listing a creditor who was innocently omitted.[10] Relying on *Colonial Sur. Co. v. Weizman*,[11] he contends that he may reopen his bankruptcy case long after receiving a discharge to list a creditor which would have received no benefit from notice. Although the Debtor states that he is unaware of whether the debt in question was incurred pre-petition or post-bankruptcy, he asserts that it is irrelevant because Sysco held at least a contingent pre-petition claim based upon the Guaranty which both parties agree could have been scheduled. Indeed, the Debtor argues, had Sysco been properly scheduled, his Guaranty obligation would have been discharged without a distribution and Sysco would have received no benefit from notice.

**IV. <u>DISCUSSION</u>**

I may reconsider a judgment upon the filing of a motion by a party within fourteen days of the entry of the judgment.[12] "Rule 59(e) motions are aimed at reconsideration, not initial consideration."[13] As such, "[a] motion for reconsideration is not a means by which parties can

---

[9] Trans. July 21, 2010 at 3:17-22.

[10] 11 U.S.C. § 350(b).

[11] *Colonial Sur. Co. v. Weizman (In re Weizman),* 564 F.3d 526, 532 (1st Cir. 2009).

[12] *See* Fed. R. Civ. P. 59(e), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023.

[13] *Harley-Davidson Motor Co., Inc. v. Bank of New England-Old Colony, N.A.*, 897 F.3d 611, 616 (1st Cir. 1990) (*citing White v. New Hampshire Dept. of Employment Security,* 455 U.S.

rehash previously made arguments. . . . To succeed on a motion to reconsider, the Court requires that the moving party show newly discovered evidence or a manifest error of fact or law."[14]

As suggested above by the Debtor, 11 U.S.C. § 350(b) expressly permits a closed bankruptcy case to be reopened "to accord relief to the debtor."[15] "It is well settled that the decision to reopen a case is within the sound discretion of the bankruptcy court."[16] "'This discretion depends upon the circumstances of the individual case and accords with the equitable nature of all bankruptcy proceedings.'"[17]

In *Weizman*, the United States Court of Appeals for the First Circuit held that "a no asset debtor could, long after the discharge, ask the bankruptcy court to reopen the proceeding to list belatedly a creditor who was innocently omitted and who would have received no benefit from notice."[18] Although that case did not involve a motion to reopen, the First Circuit nonetheless articulated the following standard for reopening a case to obtain a discharge of an omitted debt:

> That the debtor claims to have no distributable assets might make one think that the creditor is not harmed by the lack of notice and so the Ninth Circuit reading [in *Beezley v. California Title Co. (In re Beezley)*, 994 F.2d 1433, 1435-37 (9th Cir. 1993)] is just a shortcut to a no harm, no foul outcome. But no asset claims are easy to make; a creditor might want notice precisely to argue that there are assets even

---

445, 451 (1982)).

[14] *In re Wedgestone Fin.*, 142 B.R. 7, 8 (Bankr. D. Mass. 1992) (citations omitted).

[15] 11 U.S.C. § 350(b).

[16] *Massachusetts Depart. of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 53 (B.A.P. 1st Cir. 2007) (*citing In re McGuire*, 299 B.R. 53, 55 (Bankr. D.R.I. 2003)).

[17] *Id.* (*quoting Citizen's Bank & Trust Co. v. Case (In re Case)*, 937 F.2d 1014, 1018 (5th Cir. 1991)).

[18] *In re Weizman*, 564 F.3d at 532.

> though the debtor asserts otherwise. Colonial also argues that notice would have permitted it to take earlier action against other indemnitors to protect itself.
>
> It is true that an unnotified creditor is not entirely helpless even after the bankruptcy proceeding is long over: the discovery of overlooked assets and the opportunity to prove fraud can be grounds for reopening the bankruptcy. But so, too, can a debtor move to reopen to list a debt where the failure to give notice was innocent and can be shown to have caused no harm; consistent with *Stark* [*v. St. Mary's Hosp. (In re Stark)*, 717 F.2d 322 (7th Cir. 1983)], we conclude that in such a case the debtor would be entitled to such relief. Yet the burden of doing so is fairly upon the debtor who failed to give notice-or so Congress seems to have thought.
>
> * * *
>
> [A] debtor who moves to reopen to list a debt long after discharge surely must show that the omission was innocent and, even so, can probably be countered by anything that makes it inequitable to grant such relief. . . .[19]

Put succinctly, "debtors seeking to reopen to list a debt must show: (1) the omission was innocent; and (2) the equities justify reopening."[20]

Even if I were to assume that the Debtor's omission of the Guaranty from his schedules was innocent, which I note Sysco does not appear to challenge, the facts now before me, or lack thereof, do not tip the scales of equity in favor of either party. The Debtor has pinned his hopes on the fact that Sysco would not have received a distribution in his bankruptcy had it been listed, but the First Circuit unequivocally rejected that as the sole standard. In contrast, Sysco implicitly argues that it would be prejudiced if the Guaranty was retroactively voided because credit was extended to Everest after the Debtor's petition was filed in reliance on the continued validity of the Guaranty. Nonetheless, without any quantification of Sysco's claim, I am unable to weigh the alleged prejudice. It is also significant that the Debtor is not the primary obligor for this debt, but only a guarantor.

---

[19] *Id.*

[20] *In re Corbett*, 425 B.R. 51, 53 (Bankr. D.N.H. 2010).

Indeed, the extent to which Sysco may receive a distribution under Everest's plan of reorganization or otherwise seek redress from another party could certainly mitigate any alleged prejudice. Additionally, there are questions regarding whether Sysco was aware or should have known that the Debtor had left Everest when it made the post-petition advances and whether Sysco reasonably relied on the existence of the Guaranty when making the decision to extend credit to Everest. Ultimately, I simply do not have sufficient facts to resolve the issue now before me.

## V. CONCLUSION

In light of the foregoing, I will enter a pre-trial order and schedule the matter for trial forthwith.

_____
William Hillman
United States Bankruptcy Judge

Dated: August 24, 2010